UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-62965-BLOOM/Reid

BARRINGTON FAGAN,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Movant Barrington Fagan's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. [1] ("Form Motion"), and accompanying memorandum titled Motion to Vacate Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 based on Ineffective Assistance of Counsel in Violation of Due Process, ECF No. [1-1] ("Memorandum") (collectively, "Motion"), filed on December 3, 2019. The Government filed its response in opposition, ECF No. [8] ("Response"), to which Movant did not file a reply. The Court has reviewed the Motion, the Response, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.**    **BACKGROUND**

On October 12, 2018, Movant was charged in a two-count indictment for Hobbs Act robbery in violation of 18 U.S.C §1951(a) (Count 1) and using, carrying, and brandishing a firearm during a crime of violence in violation of 18 U.S.C. §924(c)(1)(A)(ii) (Count 2). *See* Case No. 18-

cr-60282, ECF No. [9].[1]

### a. Change of plea proceedings

On February 7, 2019, Movant entered a plea of guilty to Count 1 pursuant to a plea agreement. *See* CR ECF No. [43] ("Plea Agreement"). The parties agreed that Movant would plead guilty to Count 1, and the Government would dismiss Count 2 at sentencing. *Id.* at 1. The Plea Agreement provided, in pertinent part, as follows:

> Based upon the foregoing, *if the defendant has a criminal history category of one* as calculated under the Sentencing Guidelines, the Government *will recommend* that the sentence imposed be equal to the low end of the advisory Sentencing Guidelines range (base offense level 20 plus five levels for brandishing plus two levels for physical restraint minus three levels for acceptance of responsibility would set the adjusted base offense level at 24) which the Government estimates will be 51 months' imprisonment.

*Id.* at 3-4 (emphasis added). The Plea Agreement also expressed that the Movant's sentencing range "is a *prediction*, not a promise, and is *not binding* . . . o[n] the [C]ourt." *Id.* at 4-5 (emphasis added).

At the time of the change of plea, both parties believed Movant had only one criminal history point resulting in a criminal history category of I. *See* CR ECF No. [46] at 1 ("Defendant's Sentencing Memorandum"); CR ECF No. [48] at 1-2 ("Government's Sentencing Memorandum"); CR ECF No. [52] at 7, 21, 23, 26-27 ("Sentencing Transcript"). However, the Presentence Investigation Report, CR ECF No. [47] ("PSI"), computed Movant's criminal history as having two criminal history points based on two prior misdemeanor marijuana possession incidents that each resulted in adjudications withheld. *Id.* at ¶ 41. Specifically, the PSI reported that "[a]ccording to the Sentencing Table, in Chapter 5, Part A, two criminal history points

---

[1] For ease of reference, citations to the docket from Movant's underlying criminal case, 18-cr-60282, will use "CR ECF." Citations to the docket from the instant action, 19-cv-62965, will use "ECF."

establish a criminal history category II." *Id.* The PSI's description of the first incident was as follows:

> According to the arrest report, the defendant and the number of associates were observed sharing a marijuana joint. When approached by law enforcement, the defendant attempted to discard a piece of plastic baggie that contained marijuana. The defendant was initially offered an opportunity to participate in a pre-trial diversion program but this offer was revoked when the defendant did not comply with the requirements. A bench warrant was subsequently issued on January 12, 2012.

*Id.* at ¶ 39. The first incident's disposition was a plea of no contest, adjudication withheld, and a fine and costs were imposed. *Id.* As a result of this conviction, Movant received one criminal history point. The PSI's report on the second incident stated:

> The circumstances of this arrest are pending receipt. The defendant was initially issued a Notice to Appear. Post-sentencing, the defendant failed to complete program and community service requirements; therefore, a capias was issued on April 29, 2014. Fagan was rearrested on May 27, 2014 and subsequently completed the court order conditions.

*Id.* at ¶ 40. The second incident's disposition was conviction by plea, adjudication withheld, and costs and community service were imposed. *Id.* As a result of the second conviction, Movant received an additional criminal history point.

Ultimately, the PSI provided that "[b]ased upon a total offense level of 24 and a criminal history category II, the guideline imprisonment range is 57 months to 71 months." *Id.* at ¶ 75. Notably, in discussing the impact of the Plea Agreement, the PSI stated that the "low end of the advisory guideline computation as contemplated in the plea agreement was 51 months. However, this agreed upon estimation was *only applicable if the defendant was found to have a criminal history category of I*. In that *the defendant has a criminal history category of II*, the low end of the advisory guideline range is 57 months." *Id.* at ¶ 78 (emphasis added).

Prior to sentencing, Movant filed a Sentencing Memorandum acknowledging that the PSI

3

revealed Movant to have a criminal history category of II which "increases the low end of the guidelines to 57 months." CR ECF No. [46] at 2-3. However, Movant requested a downward departure and downward variance from the increased guidelines "suggest[ing] that the Defendant's Criminal History Level of II substantially overstates the seriousness of [his] criminal history[.]" *Id.* at 3.

The Government responded, acknowledging that the six-month difference in the guidelines calculation between the PSI and Plea Agreement "is attributable to the PSI finding [Movant] had one *more* misdemeanor" conviction than the parties' counsel knew about at the time of the Plea Agreement negotiation. *Id.* at 1 (emphasis added). However, the Government noted that the Plea Agreement was written conditionally on Movant having a criminal history category of I because "NCIC printouts are unfortunately occasionally unreliable" and "can be incomplete," as was the case here where the NCIC only stated one prior misdemeanor charge for Movant. *Id.* at 1-2.

### b. Sentencing hearing

On April 19, 2019, at Movant's sentencing hearing, CR ECF Nos. [49] and [52], Movant's counsel did not object to the PSI findings and admitted that he had "rel[ied] on the rap sheet" instead of "going any further with [Movant]" to "ask him about any other convictions." CR ECF No. [52] at 5-6, 23. However, Movant's counsel accepted Movant's two misdemeanor charges and the proper criminal history category of II:

> The Court: Right. But as I believe you're conceding, the withholds of adjudication on the possession of marijuana from March 16th, 2011 and December 16, 2013, each allow for a proper determination of a criminal history category II; is that correct?
>
> Mr. Schwartz: That's correct, Your Honor.

*Id.* at 7. Accordingly, based on a total offense level of 24, the Court explained that "[Movant] has a criminal history category of II, resulting, as to Count 1, [in] an advisory guideline range of 57 to

71 months." *Id.*

Before imposing the sentence, the Court acknowledged that "with regard to the Plea Agreement it is clear that, while the parties believed that there was a criminal history category I, the ultimate result within Paragraph 6 is that it is a recommendation. And it is for the Court[,]" to decide the sentence imposed. *Id.* at 26. The Court recapped that it was "clear" that the guideline computations from the Plea Agreement were based on the "estimation" that Movant had a criminal history category I, when "in fact and truth, [Movant] ha[d] a criminal history category II." *Id.* at 26-27. The Court sentenced Movant to 65 months imprisonment, followed by three years of supervised release, and restitution in the full amount of $16,460.77. *Id.* at 31-32. Movant did not pursue a direct appeal.

Movant now moves to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255 grounded on a theory that his sentence is "longer . . . than necessary" because of his counsel's "failure to object to improper information used to impose [his] sentence under the guidelines" and being "charged for conduct he was actually innocent of committing." ECF No. [1] at 3.[2] In particular, Movant contends that the PSI narratives of his past convictions were inaccurate, and his counsel was made aware of this information used during sentencing but failed to object. *Id.*; ECF No. [1-1] at 2-3. According to Movant, his counsel's ineffective performance "so affected the outcome" of the proceedings that it violated his right to due process and denied him his right to effective counsel. ECF No. [1-1] at 1. Movant "submits that if not for the errors of counsel[,] he

---

[2] In the Motion, Movant makes an unembellished request for the Court to grant him a resentencing based on actual innocence. ECF No. [1] at 11. However, his Memorandum is predicated on an ineffective assistance of counsel claim rather than actual innocence, Movant does not challenge the voluntary nature of his plea, and his factual proffer and colloquy with the Court during sentencing demonstrate that Movant admitted to the facts underlying his conviction. Accordingly, the Motion does not assert an actual innocence claim regarding his conviction.

knows that the outcome would have been different and that absent those errors . . . he would have faced a lesser sentence." *Id.* In his view, his counsel "fell below an[] objective standard of reasonableness" when his counsel failed to carefully examine his criminal record and object to it, which resulted in a sentence that was greater than what he expected based on the Plea Agreement. *Id.* at 4. Movant submits that he is entitled to an evidentiary hearing. *Id.* at 4-5.

The Government responds that Movant cannot demonstrate a viable ineffective assistance of counsel claim. ECF No. [8] at 5. Specifically, the Government maintains that Movant's "counsel was not ineffective as alleged" for failing to object to Movant's two prior marijuana convictions set forth in the PSI. *Id.* According to the Government, "Movant cannot demonstrate any prejudice resulting from [Movant's] counsel's failure to object" because "[e]ven if counsel had objected," it "would not have affected the fact that [M]ovant was convicted of the two misdemeanor offenses," and his sentencing computation, criminal history of two points and criminal history category of II would remain unchanged. *Id.* at 8. The Government asserts that "there was no viable basis upon which counsel could have objected" to Movant being imposed two criminal history points for his misdemeanor offenses and "whether [M]ovant was or was not arrested, or whether he was aware of . . . a pre-trial diversion program . . . are all irrelevant to the Court's consideration of the convictions as part of his criminal history." *Id.* Additionally, the Government reiterates that the recommendation contained in the Plea Agreement was "conditionally based" on Movant having one criminal history point from the one conviction "set out in the NCIS report that was available at the time;" and, regardless, "the Court was not bound by the recommendations in the [P]lea [A]greement." *Id.* at 8-9.

The Motion, accordingly, is ripe for consideration.

6

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a prisoner is entitled to relief if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) the court was without jurisdiction to impose such sentence, (3) the sentence exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See id.* at § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation and internal quotation marks omitted). Under § 2255, if a court finds a claim valid, the court shall vacate the judgment and "shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The burden of proof is on the movant to establish that he is entitled to relief. *Beeman v. United States*, 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding.'" *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citation omitted). Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are always properly raised by a § 2255 motion, even if they may have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).

To show ineffective assistance of counsel, a movant must prove that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the movant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Regarding the first prong of the *Strickland* test, the

movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Since this evaluation is inherently difficult, the court must strongly presume that counsel's conduct follows the reasonable professional norms and the movant must overcome this presumption. *Id.* "To overcome that presumption, 'a petitioner must establish that no competent counsel would have taken the action that his counsel did take.'" *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citation omitted).

Because the Sixth Amendment does not "specify[] particular requirements of effective assistance," "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. The United States Supreme Court makes clear that the purpose of the Sixth Amendment guarantee of effective assistance "is not to improve the quality of legal representation" but rather the "purpose is simply to ensure that criminal defendants receive a fair trial." *Id.* at 689. Whether "some reasonable lawyer" could have acted in the circumstances as the defense counsel acted is critical, not what "most good lawyers" would have done. *Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (citation omitted). Even if a decision by counsel appears unwise in retrospect, it will be considered ineffective assistance "only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Id* (citation omitted). "[C]onstitutionally acceptable performance is not narrowly defined, but instead encompasses a 'wide range'[.]" *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995).

Regarding the second prong of the *Strickland* test, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. To show prejudice, the movant must demonstrate that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the sentencing context, an increased sentence based on error by counsel may demonstrate prejudice. *Glover v. United States*, 531 U.S. 198, 203-04 (2001). However, a movant is not prejudiced by counsel's failure to raise non-meritorious claims. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014) ("[C]ounsel would clearly not fall below *Strickland*'s minimum competency requirements by deciding not to raise a meritless claim, and a petitioner would also not be prejudiced by his counsel's failure to do so.").

If the movant fails to demonstrate one of the *Strickland* prongs, the Court does not need to address the other prong. *Strickland*, 466 U.S. at 697. "The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffective claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* Even a professionally unreasonable error by counsel does not warrant a judgment in a criminal proceeding to be set aside "if the error had no effect on the judgment." *Id.* at 691. Finally, the Eleventh Circuit recognizes that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters*, 46 F.3d at 1511 (citation omitted).

Through those lenses, the Court analyzes the Motion and the parties' arguments.

### III. DISCUSSION

Determining whether Movant is entitled to relief raises two overarching issues. The first is whether Movant has satisfied both prongs of the *Strickland* test. And the second is whether Movant is entitled to an evidentiary hearing. The Court will address each issue in turn.

### a. Movant fails to establish a *Strickland* claim

Movant claims that his counsel was ineffective for "fail[ing] to object to improper information used to impose his sentence under the guidelines." ECF No. [1] at 3. Specifically, Movant contends that the narratives of his misdemeanor marijuana arrests, as described in the PSI, were inaccurate; and, while counsel was made aware of it, counsel failed to object which resulted in a longer than necessary sentence because Movant was "being charged for conduct he was actually innocent of committing." *See id.*; ECF No. [1-1] at 2-3. Movant maintains that but for his counsel's failure to object, he would have been given a shorter sentence.

Upon review and consideration, the Court does not agree. The parties acknowledge that Movant had two prior misdemeanor convictions resulting in two criminal history points. The PSI accurately noted that according to the Sentencing Table, in Chapter 5, Part A, two criminal history points establish a criminal history category II. *See* CR ECF No. [47] at ¶41. "Based upon a total offense level of 24 and a criminal history category II, the guideline imprisonment range is 57 months to 71 months." *Id.* at ¶ 75. Therefore, regardless of the *description* of the underlying incidents in the PSI or of Movant's counsel's performance, the advisory guideline range would still be calculated based on a criminal history category II and the resulting sentencing range was properly determined to be 57 months to 71 months. Nonetheless, the Court will address Movant's arguments.

### 1. Prong 1 – deficient performance

Regarding the first prong in the *Strickland* analysis, the Supreme Court directs that the Court must "indulge a strong presumption" that counsel's actions fall within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Movant has not overcome this presumption nor has he established that his counsel's performance fell below an objective standard

10

of reasonableness. No objection to Movant's criminal past would have changed the PSI calculations. After the PSI was published, both parties recognized that Movant had two prior misdemeanor convictions resulting in a criminal history category of II and an increased sentencing guideline range. *See* CR ECF No. [46] at 2-3; CR ECF No. [52] at 7. In fact, at sentencing, Defendant's counsel readily acknowledged that based on Movant's prior criminal record, Movant's criminal history category was II, not I. *See* CR ECF No. [52] at 7.

Movant contends that his counsel should have investigated Movant's criminal record and make determinations as to error and strategic decisions. ECF No. [1-1] at 4. However, Movant does not persuade the Court that his counsel's failure to more thoroughly investigate his prior criminal history was so unreasonable and deficient that it amounted to a *Strickland* violation. Here, the facts establish that the NCIC report was inaccurate and both the Government and Movant's counsel mistakenly believed there was only a criminal history category of I. In this respect, "tak[ing] issue with the ultimate outcome" of a case, as Movant does, "is not *proof* of counsel's deficiency under *Strickland*." *See Mostowicz v. United States*, 625 F. App'x. 489, 494 (11th Cir. 2015) (emphasis in original).

Moreover, after learning of the PSI results, Movant's counsel argued that Movant's prior marijuana incidents, resulting in a criminal history category of II, substantially overstated the seriousness of Movant's criminal past. *See* CR ECF No. [46] at 3; CR ECF No. [52] at 5-7. Movant's counsel requested a downward variance and departure, effectively challenging the PSI's description of Movant's criminal past. *Id.* Indeed, at sentencing, Movant's counsel explained that Movant's arrests were "somewhat skeptical[]" because "[h]e was never really held in jail. He didn't spend the night in jail for any of them. He was given a ticket and told to appear. And the matters were resolved with a withheld adjudication, no time or anything like that." CR ECF No.

[52] at 6. Therefore, Movant fails to demonstrate that his lawyer's conduct fell outside the range of reasonable conduct. The Motion, accordingly, can be denied on this basis alone.

### 2. Prong 2 – prejudice

Even if Movant's counsel's actions could be deemed unreasonable, Movant's claim fails because he cannot establish prejudice, the second prong of a *Strickland* claim. Regardless of the parties' initial belief at the time each entered into the Plea Agreement, the PSI reflected that Movant had a more extensive criminal record than believed, and his criminal history category properly incorporated his two prior misdemeanor incidents. Therefore, any objection by Movant's counsel regarding his past criminal history, including whether the narrative of his past convictions was erroneous, would not change the ultimate fact that his record includes the two misdemeanor offenses. Moreover, the underlying description of those incidents in the PSI were irrelevant to the calculation of Movant's criminal history category and the resulting sentencing guidelines.

But even more fundamentally, the parties' joint recommendation contained in the Plea Agreement, which was conditionally based on a criminal history category of I, was not binding on the Court. *See* CR ECF No. [43] at 2-5; CR ECF No. [52] at 20-21, 26. Rule 11(c)(1)(B), Fed. R. Crim. P., provides that plea agreements containing terms recommending a particular sentence or sentencing range do *not* bind the court. Therefore, even if the Government had recommended the 51-month sentence, the Court was not bound to accept it. *See United States v. Curbelo*, 259 F. App'x 302, 307 (11th Cir. 2007) (holding that defendant "should have known that he was not guaranteed" a certain sentence where the plea agreement advised defendant that receipt of safety-valve sentencing was "contingent on his eligibility" and the "sentencing recommendation was not binding").

Here, Movant's Plea Agreement forecloses any argument that he was guaranteed a sentence of 51 months:

> 2. . . . The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. . . . The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; . . . Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph one (1) and that the defendant may not withdraw the plea solely as a result of the sentence imposed.
>
> . . .
>
> 6. . . . The defendant understands and acknowledges that this calculation is binding only on the parties and is a recommendation the Court can accept or reject.
>
> . . .
>
> 8. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety.

CR ECF No. [43] at 2-5.

At sentencing, Movant's counsel conceded that the withholds of adjudication on the possession of marijuana charges allowed for a proper determination of a criminal history category of II. *See* CR ECF No. [52] at 7. Therefore, any objection would have been without merit. Accordingly, because Movant cannot establish that he would have been given a shorter sentence even if his counsel objected, the record fails to establish that he was prejudiced by his counsel's conduct. Movant's *Strickland* claim, consequently, fails on both prongs and the Motion is denied.

### b. No basis for an evidentiary hearing

In addressing a § 2255 motion, the Court may hold an evidentiary hearing, but need not do so if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015) (finding no abuse of discretion when district court declined to hold a hearing when movant's allegations of prejudice were affirmatively contradicted by the record); *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) (noting that an evidentiary hearing is not required where the movant's allegations are affirmatively contradicted by the record or the claims are patently frivolous); *Stillwell v. United States*, 709 F. App'x 585, 590 (11th Cir. 2017).

Movant argues that "he is entitled to an evidentiary hearing" because they are "required in every §2255 motion, so long as the motion alleges facts which, if true, would warrant habeas relief." ECF No. [1-1] at 4 (citation and internal quotation marks omitted). However, as explained above, the record definitively establishes that Movant is not entitled to relief on his § 2255 motion. The request for an evidentiary hearing is, therefore, without merit.

### c. Certificate of appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.* "If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* "A timely notice of appeal must be filed even if the district court issues a certificate of appealability." Rule 11(b), Rules Governing § 2255 Proceedings.

"A certificate of appealability may issue . . . only if the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a petitioner's constitutional claims on the merits, "a petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). By contrast, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Movant has not made a substantial showing of the denial of a constitutional right based on the record. As such, the Court denies a certificate of appealability.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [1]**, is **DENIED**;
2. **No** certificate of appealability shall issue;
3. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**; and
4. The Clerk of Court shall **CLOSE** this case.

Case No. 19-cv-62965-BLOOM/Reid

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 27, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of record